IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| BRAD KNIGHTON and BRITNEY KNIGHTON, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF O.K., DECEASED MINOR CHILD, and AS GUARDIANS of O.B.K. and B.E.K. | ) ) ) ) ) ) ) | Civil Action No.: |
| | ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) | |
| BEACH HOLIDAYS, LLC. | ) ) | |
| Defendant. | ) | |

**NOW INTO COURT**, through undersigned counsel comes Brad Knighton, individually and as Personal Representative of the Estate of O.K., Britany Knighton, individually, and Britany Knighton and Brad Knighton as the guardians and parents of O.B.K. and B.E.K. (collectively referred to as "Plaintiffs") and file the following claims against Beach Holidays, LLC.

**SUBJECT MATTER JURISDICTION**

1.      Plaintiffs invoke the subject matter jurisdiction of this Honorable Court under 28 U.S.C. §1333 (Admiralty) over his claims against Petitioner and Third-Party Defendants under Rule 9(h) of the Federal Rules of Civil Procedure.

**APPLICABLE LAW**

2.      This action arises and is governed by the General Maritime Law of the United States and is supplemented by the laws of the State of South Carolina.

1

**PARTIES**

3.      Brad Knighton is a Massachusetts resident, over eighteen years of age, the father of O.K. a minor who has passed away due to the subject maritime casualty, the husband of Britney Knighton, the father of O.K., O.B.K. and B.E.K. and the Personal Representative of the Estate of O.K. ("Estate of O.K.").

4.      Britney Knighton is a Massachusetts resident, over eighteen years of age, and the mother of O.K., O.B.K. and B.E.K..

5.      O.B.K. is a Massachusetts resident, under eighteen years of age, the brother of O.K.

6.      B.E..K. is a Massachusetts resident, under eighteen years of age, and the brother of O.K.

7.      Upon information and belief, Quantum Leap Charters, LLC ("Quantum Leap Charters") is a South Carolina limited liability company and the owner or owner *pro hac vice* of a 2005 63' Bertram Vessel, M/V FEAR KNOT, assigned United States Coast Guard Hull Identification Number BERZ5004D4052023.

8.      Upon information and belief, Beach Holidays, LLC ("Beach Holidays") is a South Carolina limited liability company with its principal place of business at 803 South Ocean Boulevard Myrtle Beach, SC 29577.

9.      Upon information and belief, Robert Powers ("Powers") is a South Carolina resident, over eighteen years of age, the captain and/or operator of M/V FEAR KNOT and the employee or agent of Quantum Leap Charters and/or Beach Holidays.

10.     Upon information and belief, Doug Martin ("Martin") is a South Carolina resident, over eighteen years of age, and the majority (98%) owner of Quantum Leap Charters, LLC. Martin's

brother, Ross Martin, has a minority (2%) ownership stake in Quantum Leap Charters, LLC.

11. Upon information and belief, Doug Martin has a majority ownership stake in Beach Holidays, LLC.

12. Quantum Leap Charters, LLC is an alter ego of its majority shareholder, Doug Martin.

**FACTS**

A. **The July 19, 2023 Marine Casualty**

11. On July 19, 2023, O.K. and her family were visiting her maternal grandparents in the Myrtle Beach, South Carolina area for a family vacation.

12. A decision was made to go boating on O.K.'s grandfather's vessel, a 23-foot 232 Cobalt bowrider pleasure vessel registered with the state of South Carolina ("Recreational Vessel").

13. O.K., Britney Knighton, O.B.K. and B.E.K., were passengers on the Recreational Vessel along with other family members.

14. The Recreational Vessel and M/V FEAR KNOT were proceeding in the Intracoastal Waterway north of Little River, South Carolina, a navigable waterway of the United States.

15. At all material times, Powers was the captain of M/V FEAR KNOT and working within the course and scope of his employment or agency with Quantum Leap Charters.

16. At all material times, O.K. was seated near the bow of the Recreational Vessel and her mother Britney Knighton was seated closer to the stern of the Recreational Vessel.

17. At all material times. Brad Knighton, O.B.K. and B.K. were located on a personal watercraft in the vicinity of the Recreational Vessel and M/V FEAR KNOT on the Intracoastal Waterway.

18. M/V FEAR NOT stopped or slowed down in the Intracoastal Waterway due to another

vessel.

19. While M/V FEAR NOT was stopped or moving slowly in the Intracoastal Waterway, the Recreational Vessel overtook M/V FEAR NOT on M/V FEAR NOT's starboard side and the Recreational Vessel's port side.

20. While the Recreational Vessel making its pass alongside the starboard side of M/V FEAR NOT, M/V FEAR NOT started to move forward on the Intracoastal Waterway.

21. M/V FEAR NOT and Powers created a massive wake that struck the Recreational Vessel.

22. M/V FEAR NOT's massive wake rocked the Recreational Vessel so severely that all of the people on the bow of the Recreational Vessel fell out of the vessel, including O.K.

23. M/V FEAR NOT's massive wake rocked the Recreational Vessel so severely that most of the other people on the Recreational Vessel fell out of the vessel.

24. While O.K. was in the water, she was struck by the Recreational Vessel's propellor.

25. O.K. suffered catastrophic and fatal injuries due to incised wounds of her thorax, abdomen and legs including lacerations to the left lung, diaphragm, and spleen, fractures to the right and left femur, and near-total amputation of the left leg.

26. Due to O.K. bleeding very badly from her open wounds, she passed away from her injuries.

27. Prior to creating the massive wake, Quantum Leap Charters, M/V FEAR KNOT and/or Powers did not warn O.K. or the Recreational Vessel that they were going to create the massive wake.

4

28.     Britney Knighton, O.B.K. and B.E.K. all witnessed O.K.'s death.

29.     Understandably, Britney Knighton, OB.K. and B.E.K. all became very upset watching O.K. being killed and blood pouring out of her wounds and badly severed legs.

30.     Before her death, O.K. suffered pre-death pain and suffering and mental anguish.

31.     Brad Knighton, Britney Knighton, O.B. K. and B.E.K. have suffered sorrow, pain, emptiness and grief as a result of O.K.'s untimely death.

32.     Brad Knighton, Britney Knighton, O.B. K. and B.E.K. have suffered mental anguish due to O.K.'s untimely death.

33.     Brad Knighton, Britney Knighton, O.B.K. and B.E.K. have suffered loss of companionship due to O.K.'s untimely death.

34.     Brad Knighton and Britney Knighton have incurred medical costs and funeral costs due to O.K.'s untimely death.

35.     Based on the above, it is clear that Brad Knighton, Britney Knighton, O.B.K. and B.E.K. have suffered great losses by the acts and omissions of Petitioner and Third-Party Defendants.

36.     Petitioners, Martin and Powers failed to take proper steps to make sure the Vessel was properly manned, had a lookout and had safe procedures in place.

**B.      Doug Martin's Alter Ego – Quantum Leap Charters**

37.     Quantum Leap Charters is a limited liability company under the laws of the State of South Carolina for purposes to own and operate a yacht charter business and to perform all services ancillary to such ownership.

38.     The M/V FEAR KNOT is the sole asset of Quantum Leap Charters.

39.     Quantum Leap Charters only operates its yacht charter business on weekdays during

the "summer months" in Myrtle Beach, SC by providing charter cruises to guests of three separate hotels owned by Martin.

40.     Pavilion Resort Management, LLC is an on-site rental management company for the Holiday Inn Pavilion Resort located at 1200 N. Ocean Blvd. Myrtle Beach, SC 29577.

41.     Martin and his brother Ross Martin are owners of Pavilion Resort Management, LLC.

42.     Quantum Leap Charters and Pavilion Resort Management, LLC have a guest cruise agreement which requires Quantum Leap Charters to provide two weekly cruises to hotel guests of the Holiday Inn Pavilion Resort.

43.     The guest cruise agreement provides Quantum Leap Charters supply two weekly cruises to Pavilion Resort Management, LLC for a cost of $4,000.00 per cruise.

44.     Pavilion Resort Management, LLC selects hotel guests of the Holiday Inn Pavilion Resort for free cruises on the M/V FEAR KNOT through a random drawing.

45.     Quantum Leap Charters is a mere instrumentality of Doug Martin who has domination and control over the entity.

46.     Quantum Leap Charters has employed Powers as its Captain since at least 2006 pursuant to an annually renewed Captain/Property Manager Agreement.

47.     At the time of the marine casualty at issue in this litigation, Powers and Quantum Leap Charters entered into a Captain/Property Manager Agreement effective June 1, 2023 through June 1, 2024.

48.     Pursuant to the Captain/Property Manager Agreement, Powers is paid to work an average of 40 hours per week year-round. The Captain/Property Manager Agreement (hereafter "employment agreement") includes a job description and responsibilities unrelated to the yacht

6

charter business or any of its ancillary services.

49.     The employment agreement compensates Powers for work unrelated to Quantum Leap Charters yacht charter business or any ancillary matters thereto.

50.     The employment agreement requires Powers to "manage and facilitate all aspects of the Owner's residences, 13 Channel Car, 633 Altamont View, 314 Ocean View Drive, and any other help and assistance as the Owner requests within the Captain's schedule."

51.     The employment agreement requires Powers to operate and maintain Martin's SeaVee center console boat to world-class standards of excellence in all aspects of operation, maintenance, service and cleanliness.

52.     Martin's SeaVee center console boat is not owned by Quantum Leap Charters nor is it used in any way by Quantum Leap Charters as part of its yacht charter business.

53.     The employment agreement requires Powers "to work on the Humdinger for the annual Reed Cup in January, and this will be a regularly counted work week (40 hours) by the Owner. In the event the CPM declines to work on the Humdinger, he will utilize this week as a vacation week to be taken outside of the Key Largo area."

54.     Upon information and belief, the Humdinger referenced in the employment agreement is a fishing vessel owned by a friend of Martin.

55.     The employment agreement requires Powers to be present for "an average of 11 total days per month for the dates of Dec 1 – Apr 1 are the anticipated days CPM is expected to be physically in Ocean Reef or surrounds, i.e., Bahamas, Miami, etc."

56.     Quantum Leap Charters does not conduct any yacht charter business in Ocean Reef or Miami Florida. Nor does Quantum Leap Charters conduct any yacht charter business in the

Bahamas or surrounding area. Powers requirement to work in these locations is for the sole benefit of Martin and not in any way related to the Quantum Leap Charters business.

57.    The employment agreement requires Powers to average "5 days per year … in Asheville."

58.    Quantum Leap Charters does not conduct any yacht charter business in Asheville, NC. Instead, this is the location of one of Martin's personal residences.

59.    Powers requirement to work in Asheville is for the sole benefit of Martin and not in any way related to the Quantum Leap Charters business.

60.    The employment agreement requires Powers "to additionally handle any and all tasks requested by Owner for Briarcliffe home build; … additional compensation is in effect through the build period beginning Jun. 1, 2021."

61.    The "Briarcliffe home build" is a personal residence of Martin and not related to in any way to the Quantum Leap Charters business.

62.    The employment agreement provides allowances for airfare, hotel, and car for the periods of time that the M/V FEAR KNOT is located in Ocean Reef.

63.    All salary and allowances, despite the fact that they are unrelated to any business of Quantum Leap Charters and solely for the personal benefit of Martin, are paid to Powers by Quantum Leap Charters.

64.    Quantum Leap Charters is grossly undercapitalized as it is evidence by the financial statements which demonstrate Quantum Leap Charters operates at a significant income loss with no working capital.

65.    Quantum Leap Charters was operated at a net income loss of $249,799 (2021),

$162,622 (2022) and $362,384 (2023).

66.     While operating at a net income loss consistently Quantum Leap Charters has not taken any action to reduce expenses or extend/expand its charter season and/or business to generate additional revenue and be profitable.

67.     Quantum Leap Charters is funded and operational only due to Martin's annual capital contributions.

68.     Quantum Leap Charters tax documents are prepared by certified public accountants Webster Rogers LLP.

69.     Webster Rogers LLP has determined that Martin's personal use of the M/V FEAR KNOT exceeds allowable use for depreciation.

70.     Martin uses M/V FEAR KNOT for personal use without entering into a charter with Quantum Leap Charters.

71.     Martin uses M/V FEAR KNOT for personal use without paying Quantum Leap Charters for the use of M/V FEAR KNOT.

72.     Martin uses M/V FEAR KNOT to entertain prospective business associates, not of Quantum Leap Charters, but for his hotel businesses.

73.     Webster Rogers LLP no longer depreciates the M/V FEAR KNOT on Quantum Leap Charters tax filings because Martin treats the M/V FEAR KNOT like a personal asset and his second home.

74.     Quantum Leap Charters fails to observe corporate formalities.

75.     Quantum Leap Charters, LLC operates merely as a façade for the majority shareholder, Martin.

76.     Quantum Leap Charters operates as the alter ego of Martin such that it would be inequitable to uphold a legal distinction between the two.

**C.     Ryan Powers – An Employee of Beach Holidays, LLC**

77.     Ryan Powers was hired as a seaman in June 2006 by Beach Holidays, LLC.

78.     A Form W-4 Employee Withholding Certificate was completed at the time of Powers' hiring. The W-4 dated June 2006 identified Beach Holidays, LLC as his employer.

79.     An employee verification form was completed at the time of Powers' hiring. The employee verification form identifies Beach Holidays, LLC as his employer.

80.     Ryan Powers was provided an Employee Handbook at the time of his hiring. The Employee Handbook listed all employers for which the handbook applied. While Beach Holidays, LLC is a listed employer, Quantum Leap Charters, LLC is <u>not</u> identified.

81.     The above-referenced federal tax forms and employee handbook completed and provided in June 2006 identified Beach Holidays, LLC despite Quantum Leap Charters having been formed and registered as an LLC under South Carolina laws in 2004.

82.     At all relevant times, Powers had a "Captain/Property Manager Agreement" which defined, among other things, the job description and salary.

83.     At all relevant times, the CPM required Ryan Powers to provide a 6-week written notice upon leaving employment to Beach Holidays, LLC employee, Lynne Anderson, and the "Owner".

84.     On November 4, 2025, Doug Martin was deposed in this action and testified:

> Ryan Powers is the only one that is paid directly from Quantum Leap.
> He's the only employee by Quantum Leap. So he just is paid directly
> from Quantum Leap.

85.    On March 10, 2026, Plaintiffs s served a subpoena on accounting Webster Rogers.

86.    On March 10, 2026, Plaintiffs s served a subpoena on accounting firm Elliott Davis.

87.    The Webster Rogers and Elliott Davis subpoenas were served to obtain financial documents and accounting QuickBooks files which Petitioner refused to produce during discovery of this action.

88.    The financial and accounting documents obtained from the accounting firms in response to the above-referenced subpoenas demonstrate that Quantum Leap does not pay Ryan Powers directly.

89.    At all relevant times to this litigation, Ryan Powers payroll was processed by employees of Beach Holidays, LLC.

90.    At all relevant times to this litigation, for each pay period Quantum Leap electronically transferred funds from its operating bank account to a bank account for Beach Holidays, LLC.

91.    These electronic bank transfers were processed and handled by Beach Holidays, LLC employees and the money transfers were made to reimburse Beach Holidays, LLC for Ryan Powers salary.

92.    In turn, Beach Holidays, LLC electronically transferred the funds from its bank account to Concept HR for payroll.

93.    Concept HR is contracted to handle the Human Resources, payroll, and benefits for Beach Holidays, LLC.

94.    At all relevant times, Concept HR issued a Form W-2 Wage and Tax Statement to Ryan Powers.

95.     On July 2, 2025, Plaintiffs s served Discovery Requests on Petitioner Quantum Leap Charters, LLC and Ryan Powers which included a request for all Form W-2's. Petitioner and Ryan Powers answered the discovery request as follows:

> 6.     Produce all Quantum Leap Charters, LLC payroll records for the last five (5) years. Payroll records include, but are not limited to, W-2's, 1099's, 941's, time sheets, time records, pay stubs, etc.
>
> **RESPONSE: Restating and remaining consistent with Quantum Leap and Ryan Powers' previous objections to temporal scope, Quantum Leap and Ryan Powers will produce documents encompassing the years 2021 – 2023 and will limit the scope of this Request to documents related to the payment of Ryan Powers and Donovan Burke. Quantum Leap and Ryan Powers refers Plaintiff to the documents produced contemporaneously herewith in addition to Quantum Leap's previous production responsive to this Request.**

96.     On Tuesday, July 14, 2026, Petitioners produced (for the very first time) a printed hard copy of the Form W-2 allegedly issued to Ryan Powers.

97.     The production of the Powers W-2 occurred during the break of the lunch hour of a deposition noticed under Rule 30(b)(6) for a corporate designee of Quantum Leap Charters.

98.     The W-2 produced by Petitioners identified the employer as "Quantum Leap, LLC c/o Beach Holidays, LLC".

99.     At all relevant times to this litigation, Ryan Powers contributed funds each pay period to a Beach Holidays, LLC 401(k) plan.

100.    At all relevant times to this litigation, Ryan Powers is offered health insurance benefits through Beach Holidays, LLC.

101.    At all relevant times to this litigation, Ryan Powers submitted all invoices related to the operation and maintenance of the M/V Fear Knot to employees of Beach Holidays, LLC.

102.    At all relevant times, Ryan Powers submitted reimbursement requests and receipts for airfare, car, meal, travel or other out-of-pocket expenses to Joyce Conly, an employee of Beach Holidays, LLC.

103.    At all relevant times, Ryan Powers received reimbursement checks from Joyce Conly, an employee of Beach Holidays, LLC.

104.    At all relevant times, Ryan Powers sent weekly emails with his weekly hours, a list of tasks performed, and a list of tasks he was working on to Joyce Conly, an employee of Beach Holidays, LLC.

105.    At all relevant times, Lynne Anderson, an employee of Beach Holidays, LLC, would email hotel guests to notify them that they won the raffle for a free cruise on the M/V Fear Knot.

**CLAIMS FOR RELIEF**

**COUNT I - NEGLIGENCE AGAINST BEACH HOLIDAYS, LLC**

106.    Plaintiffs refer to and incorporate herein by this reference each and every allegation of the preceding paragraphs as though fully set forth at length.

107. The negligence, carelessness, recklessness, willfulness and wantonness of Beach Holidays, LLC was a proximate cause of Plaintiffs injuries and damages in the following respects:

a. failing to have a proper lookout on M/V FEAR KNOT;

b. allowing improperly trained employees and/or agents to operate M/V FEAR KNOT;

c. not taking steps to prevent the improperly trained employees or agents from creating a wake while the Recreational Vessel was in close proximity to M/V FEAR KNOT;

d. not maintaining M/V FEAR KNOT in a seaworthy condition;

e. not having a lookout on M/V FEAR KNOT;

f. not warning O.K. and the Recreational Vessel about the creation of a large wake by commencing the navigation of M/V FEAR KNOT while the Recreational Vessel was in close proximately to M/V FEAR KNOT;

g. not following the Inland Rules of Navigation;

h. not following good seamanship practices;

i. not seeing the Recreational Vessel's position before creating such a large wake;

j. creating such a large wake;

k. rocking the Recreational Vessel;

l. causing O.K. and others to fall out of the Recreational Vessel;

m. failing to have safe operational procedures on M/V FEAR KNOT;

n. falling to take steps to not allow such a large wake to strike the Recreational Vessel; and

o. other acts of negligence to be shown at trial.

108. As a direct result of Beach Holiday LLC's negligence, carelessness, recklessness,

14

willfulness and wantonness, Plaintiffs have sustained compensable injuries and damages, all of which will be shown more fully at the trial of this cause.

109. O.K.'s Estate, Brad Knighton, Britney Knighton, O.B.K. and B.K. have sustained the following compensable elements of damages as a result of Beach Holiday LLC's negligence and culpable conduct: medical bills, conscious pain and suffering, pre-death fear or fright, loss of enjoyment of life, mental anguish, loss of companionship, punitive damages, and grief, and/or other compensable damages.

### COUNT II - WRONGFUL DEATH AGAINST BEACH HOLIDAYS, LLC

110. Plaintiffs refer to and incorporate herein by this reference each and every allegation of preceding paragraphs as though fully set forth at length.

111. The negligence, carelessness, recklessness, willfulness and wantonness of Beach Holidays, LLC proximately caused O.K.'s Estate and Brad Knighton injuries and damages in the following respects:

a.  failing to have a proper lookout on M/V FEAR KNOT;

b.  allowing improperly trained employees and/or agents to operate M/V FEAR KNOT;

c.  not taking steps to prevent the improperly trained employees or agents from creating a wake while the Recreational Vessel was in close proximity to M/V FEAR KNOT;

d.  not maintaining M/V FEAR KNOT in a seaworthy condition;

e.  not having a lookout on M/V FEAR KNOT;

f.  not warning O.K. and the Recreational Vessel about the creation of a large wake by commencing the navigation of M/V FEAR KNOT while the Recreational Vessel was in close proximately to M/V FEAR KNOT;

g.  not following the Inland Rules of Navigation;

15

h.   not following good seamanship practices;

i.   not seeing the Recreational Vessel's position before creating such a large wake;

j.   creating such a large wake;

k.   rocking the Recreational Vessel;

l.   causing O.K. and others to fall out of the Recreational Vessel;

m.   failing to have safe operational procedures on M/V FEAR KNOT;

n.

o.   falling to take steps to not allow such a large wake to strike the Recreational Vessel; and

p.   other acts of negligence to be shown at trial.

112.   As a direct result of the wrongful death of O.K. and Beach Holiday LLC's negligence, carelessness, recklessness, willfulness and wantonness, the Estate of O.K. and the statutory beneficiaries of the Estate of O.K. have sustained and will continue to sustain compensable injuries and death.

113.   O.K.'s Estate, Brad Knighton, Britney Knighton, O.B. K. and B.K. have sustained the following compensable elements of damages as a result of Beach Holiday LLC's negligence and culpable conduct: medical bills, conscious pain and suffering, pre-death fear or fright, loss of enjoyment of life, mental anguish, loss of companionship, punitive damages, and grief, and/or other compensable damages.

### COUNT III - SURVIVAL ACTION AGAINST BEACH HOLIDAYS LLC

114.   Plaintiffs refer to and incorporate herein by this reference each and every allegation of the preceding paragraphs as though fully set forth at length.

115.   The negligence, carelessness, recklessness, willfulness and wantonness of Beach Holiday's LLC proximately caused O.K.'s Estate and Brad Knighton's injuries and damages in the

following respects:

a. failing to have a proper lookout on M/V FEAR KNOT;

b. allowing improperly trained employees and/or agents to operate M/V FEAR KNOT;

c. not taking steps to prevent the improperly trained employees or agents from creating a wake while the Recreational Vessel was in close proximity to M/V FEAR KNOT;

d. not maintaining M/V FEAR KNOT in a seaworthy condition;

e. not having a lookout on M/V FEAR KNOT;

f. not warning O.K. and the Recreational Vessel about the creation of a large wake by commencing the navigation of M/V FEAR KNOT while the Recreational Vessel was in close proximately to M/V FEAR KNOT;

g. not following the Inland Rules of Navigation;

h. not following good seamanship practices;

i. not seeing the Recreational Vessel's position before creating such a large wake;

j. creating such a large wake;

k. rocking the Recreational Vessel;

l. causing O.K. and others to fall out of the Recreational Vessel;

m. failing to have safe operational procedures on M/V FEAR KNOT;

n. falling to take steps to not allow such a large wake to strike the Recreational Vessel; and

o. other acts of negligence to be shown at trial.

116. As a direct result of the wrongful death of O.K. and Petitioner's negligence, carelessness, recklessness, willfulness and wantonness, the Estate of O.K. has sustained injuries and death, all of which will be shown more fully at the trial of this cause.

17

117.    The Estate of O.K. has sustained the following compensable elements of damages as a result of Beach Holiday LLC's negligence and culpable conduct: pre-death conscious pain and suffering, pre-drowning fear or fright, medical expenses, loss of wages, funeral expenses, punitive damages, and other compensable damages.

## PRAYER

**WHEREFORE**, based on the foregoing, Plaintiffs pray:

1.    That Defendants be cited to appear and answer all matters aforesaid;

2.    That judgment be entered for Plaintiffs and against Defendant for all general and special damages known to the law;

3.    That all expert fees be taxed as costs;

4.    That Plaintiffs be awarded all costs and legal expenses;

5.    That Plaintiffs be awarded pre-judgment interest; and

6.    That Plaintiffs be awarded all other relief the Court deems fit.

BLUESTEIN LAW FIRM, P.A.

By: s / S. Scott Bluestein
S. Scott Bluestein / Federal Id No. 6891
266 W Coleman Blvd., Suite 103
Mount Pleasant, SC 29464
Post Office Box 22253
Charleston, SC 29413-2253
Telephone: 843-577-3092
Facsimile: 843-577-3093
Email: scott@boatinglaw.us

AND

Co-counsel to be admitted Pro Hac Vice
THE BEASLEY FIRM, LLC

Louis F. Tumolo / PA Id. No. 314255
The Beasley Building
1125 Walnut Street
Philadelphia, PA 1910
Telephone: 215-931-2634
Facsimile: 215-592-8360
Email: louis.tumolo@beasleyfirm.com

**ATTORNEYS FOR PLAINTIFFS**

July 17, 2026
Mount Pleasant, South Carolina